DANIEL L. DYSART, Judge.
| Florence Saucier, Fred Saucier and Janet Malone (collectively “the Sauciers”) seek reversal of a judgment in favor of *799 Barbara Regua. The trial court awarded Regua all of the monies she paid to the Sauciers as a down payment, monthly notes and the ad valorem taxes on a duplex she acquired through a bond for deed agreement. Additionally, the trial court awarded Regua the monies expended by her for renovation of property. For the following reasons, we affirm.
This case involves a duplex flooded and badly damaged in the aftermath of Hurricane Katrina.[1] The property is located in St. Bernard Parish, which was ravaged by flood waters that remained for weeks. In April of 2006, Regua acquired the subject property through a bond for deed agreement. The purchase price was $40,000.00. Regua made a down payment of $5,000.00, and was to pay the balance in ninety-six installments. The property was purchased “as is,” which in this case meant in need of gutting, re-wiring, re-plumbing, new floors, walls, etc. Additionally, Regua was to pay the property taxes due each year.
|2The bond for deed agreement provided that if the purchaser defaulted on the monthly payments, the sellers must give written notice of the default to the purchaser. Purchaser would have forty-five days to pay the amount due. If not paid, the purchaser was to quit and surrender the premises upon demand.
The sellers’ default clause provided that once all payments were made, if the seller did not deliver a clear title, the purchaser could demand the return of all payments made and the fair market value of any material improvements minus the fair market value of rental for the period of time purchaser occupied the premises.
Sometime in 2009, Regua failed to make several monthly payments to the Sauciers. The Sauciers sent written notice of default to Regua, who attempted to pay $1200.00 toward the arrearage of $2,254.29. The Sauciers reportedly rejected the partial payment, and moved forward on the default. On September 29, 2009, more than three and one-half years after the parties entered into the bond for deed contract, the Sauciers recorded an affidavit of cancellation of the bond for deed. The Sauci-ers thereafter changed the locks on the property, preventing Regua from entering and recovering her personal property.
Initially, Regua filed a suit against the Sauciers alleging wrongful eviction, conversion of property, breach of contract, fraud, reimbursement for improvements made to the property, and injunctive relief. The Sauciers answered the lawsuit denying any wrongdoing.
Following a judge trial, the court awarded Regua $86,203.36, which included her original' down payment, the monthly installments paid, the costs | sincurred in the renovation[2], and the property taxes paid by Regua. The court denied Regua’s claims for conversion and for wrongful eviction based on lack of evidence. The court indicated that the parties could “reopen” the case for a ruling on fair rental value and/or attorney fees, but otherwise deemed the judgment final for purposes of appeal. The record does not indicate that either party sought to litigate the additional issues, thus we will address the assignments of error presented on appeal.
*800 DISCUSSION:
Louisiana Revised Statute 9:2941 defines a bond for deed as a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments, and in which the seller, after payment of a stipulated sum, agrees to deliver title to the buyer.
The only basis for default described in the bond for deed statutes, La. R.S. 9:2941 et seq., is the failure to make the required payments. La. R.S. 9:2945 provides that where there is no mortgage on the property, as in this case, if the buyer fails to make the payments in accordance with the terms and conditions of the bond for deed contract, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records of the parish where the property is located. Further, the seller must serve notiee upon the buyer, and make |,¡known that unless payment is made within forty-five days from the mailing of the notice, the bond for deed shall be cancelled.
The subject bond for deed contract provided, in addition to the language of La. R.S. 9:2945, a provision that if the contract should terminate, the purchaser “shall quit and surrender the premises to Sellers.” Additionally, “[i]f this Contract shall have been so terminated be [sic] Sellers, Sellers may at any time thereafter resume possession of the premises by any lawful means and remove Purchaser or other occupants and their effects.”
There is no dispute that the Sauciers followed both the law and the bond for deed contract when they filed into the conveyance records the affidavit of cancellation of the bond for deed. The Sauciers also admit in them brief that the seller in a bond for deed contract is not entitled to retain all monies paid by the buyer as liquidated damages, even if the contract so provides. The Sauciers argue, however, that the trial court relied too heavily on the holding in Berthelot v. Le Investment, LLC, 02-2054 (La.App. 4 Cir. 1/21/04), 866 So.2d 877.
In Berthelot, a motel owner entered into a lease/purchase agreement, which in addition to the standard bond for deed language, included a provision allowing the seller to cancel the agreement and take possession if the purchaser failed to maintain certain property maintenance requirements. The seller filed suit on the basis that the purchaser had not maintained the property per the agreement. The trial court found in favor of the seller, allowing him to keep the $500,000.00 “nomjrefunda-ble”5 down payment, as well as the monthly payments made until suit was filed, which totaled $30,196.00.
The appellate court initially determined that the lease/purchase agreement was in fact a bond for deed contract. Id., 02-2054, p. 4, 866 So.2d at 880. The Court also determined that it was not against public policy for parties to a bond for deed contract to include other bases for cancellation of the contract besides non-payment. Id., 02-2054, p. 6, 866 So.2d at 881. However, the Court also found that appropriate adjustments must be made in failed bond for deed contracts. The vendor in a bond for deed contract is not entitled to retain all monies paid by the purchaser because such a would be inequitable, unreasonable and an illegal attempt to recover punitive damages. Id. Ultimately, the Court found that the vendor, Berthelot, was only entitled to an allowance for the fair rental value of the property while it was occupied by the purchaser. Id., 02-2054, p. 7, 866 So.2d at 882; also see, Scott v. Apgar, 238 La. 29, 113 So.2d 457 (La.6/25/59); Montz v. Theard, 01-0768 (La.App. 1 Cir. 2/27/02), 818 So.2d 181; Gray v. James, 503 So.2d 598 (La.App. 4 Cir.1987).
*801 The Berthelot court vacated the judgment in favor of the vendor, and because the record did not allow for it to make a determination of fair rental value of the property, remanded the matter to determine same.
In this case, the trial court found, and the record before us supports, that it is unknown whether Regua ever occupied or rented the premises to others. The trial court found that the property was purchased in a damaged, uninhabitable condition, |fiand that nearly forty-one months after Regua took possession of the premises, only one side of the duplex was complete and the other side was ninety-five percent complete.
Although the trial court deemed the judgment to be final for purposes of appeal, it indicated that it would entertain argument on fair rental value and assessment of attorney fees. Neither party moved to do so in the trial court prior to the lodging of this appeal.
Accordingly, we find that based on the facts of this case, the trial court reached the correct result. To not award Regua reimbursement for the down payment, monthly payments, taxes and cost of repairs would be inequitable, unreasonable and an illegal award of punitive damages to the Sauciers.[3]
For the reasons assigned, we affirm the judgment of the trial court.
AFFIRMED.

. All of the facts reported herein are gleaned from pleadings in the record, appellate briefs, attached exhibits and the trial court's reasons for judgment. No transcript was provided for this Court's review.

. The record includes receipts for all monies spent to renovate the property. The Sauciers did not argue that the value of their property was not increased by the amount of expenditures incurred in the renovation and improvements.

. No evidence was introduced to prove that the enhanced value of the property was less than the amount stipulated as Regua’s costs for materials and labor in re-constructing the property.